# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HELEN NICKELS, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:21-CV-00363-AGF |
| SCOTT CREDIT UNION, et al | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This action under the Fair Credit Reporting Act ("FCRA") and the Missouri Merchandising Practices Act ("MMPA") arises out of Defendant Scott Credit Union's ("SCU") reporting of debt owed by Plaintiff in connection with a car loan agreement allegedly entered by Plaintiff in 2016. Plaintiff claims that she never entered the loan agreement in question; that the loan agreement was entered by her son, using her name without her knowledge or consent; that she informed the credit reporting agencies ("CRAs")[1] of her dispute in 2020, shortly after she discovered the debt was being reported in her name; and that SCU thereafter failed to reasonably investigate the dispute and delete the inaccurate information reported to the CRAs.

---

[1] The CRAs, Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC, were all named as Defendants in this case but have since settled and been dismissed from this lawsuit.

The matter is now before the Court on SCU's renewed motion (ECF No. 61) for summary judgment.[2] For the reasons set forth below, the Court will grant SCU's motion in part, as to Plaintiff's claim under the MMPA, but will otherwise deny the motion.

## BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff for purpose of the motion before the Court, the record establishes the following.[3] On July 8, 2016, Plaintiff's son, Walter Nickels, Jr. ("Nickels, Jr."), purchased a Dodge Charger from a dealer. The dealer required Nickels, Jr. to have a co-signer and proof of insurance to purchase the vehicle. Without Plaintiff's knowledge or consent, Nickels, Jr. obtained Plaintiff's insurance card, used her personal identifying information, and signed the sales contract with his own name and forged Plaintiff's signature as the co-signor.

---

[2]   SCU renewed its summary judgment motion pursuant to the Court's Memorandum and Order dated November 4, 2021 (ECF No. 47), in which the Court (1) denied without prejudice SCU's earlier-filed summary judgment motion, (2) granted Plaintiff's request under Federal Rule of Civil Procedure 56(d) for additional time to conduct discovery before responding to the earlier-filed summary judgment motion, and (3) granted Plaintiff until January 3, 2022 to conduct whatever discovery she believed necessary to respond to SCU's motion. ECF No. 47. The Court further ordered that SCU could renew its motion for summary judgment on or after January 3, 2022, either incorporating by reference its previously filed memorandum in support thereof or filing new supporting memorandum.

[3]   To the extent any properly supported statement of uncontroverted material fact has been denied based solely on the statement's purported immateriality or a party's lack of sufficient information to determine whether to dispute the fact, the Court has deemed such fact to be admitted to the extent supported by the record. *See* Fed. R. Civ. P. 56(c), (e); E.D. Mo. L.R. 4.01(E).

On the same date and in connection with the vehicle purchase, Nickels, Jr. applied for financing in his mother's name without her knowledge or authorization. On July 18, 2016, SCU issued a loan of $30,904 in the name of Plaintiff and Nickels, Jr. for the vehicle purchase. The loan contract contains Plaintiff's name as the primary borrower and Nickels, Jr. as the joint borrower, and it lists 5052 Plover St., St. Louis, MO 63120 as the address of the borrower. The loan contract contains what purport to be Plaintiff's and Nickels, Jr.'s signatures. However, in a sworn declaration, Nickels, Jr. now attests that he fraudulently signed Plaintiff's name without her knowledge or consent.

On August 3, 2016, a woman claiming to be Plaintiff called SCU to discuss the above-noted loan. SCU's notes regarding the call indicate that SCU verified the caller was Plaintiff. The caller asked SCU to stop payment to the dealer under her loan because the vehicle purchased was a "lemon." *See* ECF No. 28, Def.'s Statement of Facts at ¶ 5. Nickels, Jr. now attests that the caller was his female friend who pretended to be Plaintiff.

Beginning in October 2016, payments stopped being paid on the loan and SCU thereafter attempted to contact Plaintiff by telephone. SCU's notes of these calls indicate that SCU believed they spoke to Plaintiff by telephone in November of 2016. Plaintiff denies that she spoke to SCU at that time.

In February 2020, Plaintiff applied for financing to purchase a vehicle through another lender. Plaintiff was denied financing through multiple lenders because of a repossession and charge-off from SCU. Plaintiff attests that, prior to this time, she was not aware of any loan associated with SCU. Plaintiff subsequently learned that SCU was reporting to the CRAs that she owed balance of $9,170.

3

On November 9, 2020, Plaintiff sent a dispute letter to the three CRAs and claimed that the loan did not belong to her, that her son purchased the car without her knowledge, and that she believed that her son or the salesperson forged her signature on the loan documents. *See* ECF No. 28-6, Def.'s Ex. 6. She attached to her dispute a letter from the Missouri Attorney General dated October 14, 2020 and addressed to Plaintiff, indicating that Plaintiff had informed the Attorney General's office that she was a potential victim of identity theft. Plaintiff also attached to her dispute letter a copy of her driver's license, containing her signature and listing her address as 209 Kirk Drive, St. Louis, MO 63135[4]; a copy of a state court judgment showing that her son, Nickels, Jr., was incarcerated on unrelated charges (resisting arrest and assault of a law enforcement officer); and a "Request for Incident/Accident Report" by Plaintiff to the St. Louis police reporting identity theft in September 2020 in connection with SCU and the auto dealership. *See id.*

Plaintiff copied SCU on the dispute correspondence, and the CRAs also communicated Plaintiff's dispute to SCU. SCU's policy with respect to consumer credit disputes is to investigate the dispute, review relevant information, and report back to the CRA whether the disputed information is accurate. SCU reviewed "all documentation

---

[4] In its reply brief, SCU attaches another version of Plaintiff's driver's license that lists Plaintiff's address as 5052 Plover, St. Louis, MO 63120. *See* ECF No. 75-2. But the expiration dates on both licenses are not visible in the photos attached to the parties' briefs, and it is not otherwise clear from the photos which license would have been valid at the time the loan was issued. Further, Plaintiff has attested that her address at the time the loan was issued was 209 Kirk Drive, that the Plover address belonged to a "family member," and that she did not receive any mail at the Plover Avenue address at that time. *See* ECF No. 35-2 at ¶ 9.

offered in support of [Plaintiff's] Dispute." *See* ECF No. 28, Def.'s Statement of Facts at ¶ 13; ECF No. 28-5.

Specifically, on November 25, 2020, SCU's servicing specialist, Jennifer Jackson, investigated Plaintiff's dispute after being notified of it by the CRAs and documented the dispute as a claim of identity theft. *See* ECF No. 28-5, Def.'s Ex. 5 at ¶ 7. Jackson compared the information contained in Plaintiff's dispute with SCU's records regarding the loan, including Plaintiff's first and last name, date of birth, and social security number; information regarding the vehicle financed by the loan; and SCU's notes and loan history for the loan account. Jackson documented her investigation for SCU's records.

Jackson determined that each piece of information provided by Plaintiff matched what appeared in SCU's records for the loan. Consistent with SCU policy, Jackson believed that the matching information reasonably confirmed an obligation that Plaintiff incurred. Therefore, Jackson reported to the CRAs that that the account was being accurately reported. The CRAs thereafter responded to Plaintiff that the account was verified as accurate and would remain on Plaintiff's credit report.

On January 4, 2021, Plaintiff sent another dispute letter to the CRAs stating that the CRAs were reporting inaccurate and fraudulent credit information in Plaintiff's credit report. *See* ECF No. 28-7, Defs.' Ex. 7. Plaintiff again stated that the signatures on the sales contract and loan were not hers, the address listed was not her address, she never authorized anyone to sign on her behalf, and the car belonged to her son, Nickels, Jr., who was then incarcerated. *Id.* Plaintiff attached to the dispute letter a copy of her

5

driver's license, her prior dispute letter, a copy of the loan documents from SCU, and a copy of a police report dated September 30, 2022, in which Plaintiff reported identity theft. *See id*. The police report states that the "incident location" was 5052 Plover Ave, St. Louis, MO 63120, that the suspect was "unknown," that the victim resided at 209 Kirk Drive, St. Louis, MO 63135, and that the victim reported identity theft in connection with a vehicle loan that she did not take out. *Id.* at 6.

SCU, through Jackson, was again notified of the dispute by the CRAs and reviewed all documents associated with the dispute, including the police report documenting Plaintiff's complaint of identity theft but reporting the suspect as "unknown." Jackson again compared the dispute documentation with SCU's records regarding the loan. Specifically, Jackson again compared and verified Plaintiff's first and last name, date of birth, and social security number; information regarding the vehicle financed by the loan; and the loan history in SCU's account log. Again, Jackson determined the information matched.

Jackson also compared the signature on Plaintiff's dispute letter and the handwriting on the envelope with the signature on the loan documents and account records. Jackson determined that the signatures appeared to match.

In reviewing the loan history in SCU's account log, Jackson also determined that SCU spoke to Plaintiff by phone on August 3, 2016, when a person claiming to be Plaintiff told SCU that the vehicle was a lemon and indicated that she did not want the dealership to be paid. Jackson believed that Plaintiff made these statements because Jackson was aware of SCU's policies that require that, every time a phone contact is

6

made with a customer, the customer is required to provide certain identifying information such as their name, date of birth, and last four digits of their social security number, in order to verify the caller is whom she claims to be. Based on this investigation, Jackson concluded that Plaintiff was aware that she was responsible for the loan at issue, and Jackson therefore reported to the CRAs that the account was accurate as it was being reported. Jackson documented her investigation process for SCU's records. SCU did not contact Nickels, Jr. as part of either of its investigations.

Plaintiff filed this suit on March 8, 2021. The following claims in Plaintiff's amended complaint (ECF No. 48) remain for the Court's consideration: (1) SCU negligently or willfully failed to conduct a reasonable investigation of Plaintiff's disputes as required by the FCRA, 15 U.S.C. § 1681s-2(b) (Counts III & IV), and (2) SCU engaged in deceptive or unfair business practices when it misrepresented that Plaintiff owed money on a loan and attempted to collect on a debt that Plaintiff did not owe, in violation of the MMPA (Count V).

SCU has filed a single-count counterclaim against Plaintiff for breach of contract relating to the money owed on the loan at issue in Plaintiff's complaint. *See* ECF No. 53.

## ARGUMENTS OF THE PARTIES

SCU argues that Plaintiff's FCRA claims (Counts III & IV) are barred by the statute's two-year limitations period because Plaintiff knew of the basis for her claims as early as 2016, when, according to SCU, she spoke to SCU by phone regarding the loan and received letters from SCU regarding the loan. Further, SCU argues that the FCRA claims fail because the undisputed material facts demonstrated that SCU performed a

reasonable investigation of the dispute. Finally, SCU argues that Plaintiff's MMPA claim (Count V) is preempted by the FCRA.

Plaintiff opposes SCU's motion. As to her FCRA claims, Plaintiff argues that the claims are not time-barred because she did not learn of the purported loan until February of 2020, when she was denied financing based on her credit report, and she never spoke to SCU or received any letters from SCU regarding the loan before that time. Plaintiff further argues that genuine disputes of material fact exist with respect to whether SCU conducted a reasonable investigation of her dispute. As to her MMPA claim, Plaintiff contends the claim is not preempted because it is based on SCU's misrepresentation of the money owed by Plaintiff rather than SCU's false reporting of debt to the CRAs

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *In re Citizens Loan and Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and

provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

**FCRA**

I. Statute of Limitations

Plaintiff's claims under the FRCA must have been brought "not later than the earlier of . . . (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

SCU contends that Plaintiff discovered the basis for her FCRA claim in 2016, when, according to SCU, SCU representatives spoke with Plaintiff by phone and sent letters to Plaintiff's residence about the loan. But there are genuine disputes of material fact as to whether the person SCU spoke with in 2016 was in fact Plaintiff (as opposed to an impersonator) and whether Plaintiff in fact resided at the address to which SCU sent any debt collection letters at the relevant time. On this record, SCU has not established that Plaintiff's FCRA claims are time-barred as a matter of law.

II. Reasonable Investigation

Upon notification from a CRA of a consumer's dispute over the accuracy of credit information, the furnisher of that information must:

(A) conduct an investigation with respect to the disputed information;

9

> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b)(1).

"[T]he investigation an information furnisher undertakes must be a reasonable one." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (collecting cases). A "reasonable" investigation "is one that a reasonably prudent person would undertake under the circumstances." *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (citation omitted). The standard is an objective one, and the "burden of showing the investigation was unreasonable is on the plaintiff." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (citations omitted).

"Because a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b) arises when it receives a notice of dispute from a CRA, it need investigate only what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908 (8th Cir. 2011)

10

(citation omitted). Therefore, "[h]ow thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (citation omitted). "For instance, a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute." *Chiang*, 595 F.3d at 38. "The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (citation omitted).

"Whether a defendant's investigation is reasonable is a factual question normally reserved for trial," but summary judgment may be appropriate "if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). The record here, viewed in the light most favorable to Plaintiff does not place the reasonableness of SCU's procedures "beyond question." Therefore, the Court will deny SCU's motion for summary judgment on Plaintiff's FCRA claim.

The cases relied upon by SCU in support of summary judgment all involve situations where the CRA did not fully inform the furnisher of the nature of the consumer's dispute, only providing vague or cursory information. But here, there is no contention that the CRAs failed to notify SCU of Plaintiff's contention of identity theft. To the contrary, SCU maintains that it reviewed "all documentation offered in support of

11

[Plaintiff's] Dispute," and that it coded Plaintiff's dispute as an identity theft claim. *See* ECF No. 28, Def.'s Statement of Facts at ¶ 13; ECF No. 28-5, Def.'s Ex. 5 at ¶ 7.

SCU further argues that it had no reason to investigate Nickels, Jr. because the police report attached to Plaintiff's January 2021 dispute letter listed the suspect as "unknown" and because the arrest record for Nickels, Jr. also attached to the dispute letter appeared to be unrelated to claim of identity theft. But SCU fails to mention that Plaintiff's initial dispute letter to the CRAs, dated November 9, 2020, did in fact report Plaintiff's belief that her incarcerated son, Nickels, Jr., forged her signature on the loan documents. SCU contends that it reviewed "all documentation" offered in support of Plaintiff's dispute, which would have included Plaintiff's November 9, 2020 letter. Indeed, SCU's records of its investigation into Plaintiff's dispute include a notation that Plaintiff was claiming that her son or a salesperson forged the signature on the loan documents. *See* ECF No. 28-5, Def.'s Ex. 5, at p. 6.

Under these circumstances, a rational jury could find that SCU should have done more to investigate Plaintiff's claim and that its failure to do so rendered the investigation unreasonable. For example, in order to confirm that the account was accurate, SCU relied on the facts that Plaintiff's name, date of birth, and social security number was accurately listed in SCU's loan documentation, and that the person who spoke to SCU representatives in 2016 was able to verify such personal identifying information. But this evidence is equally consistent with Plaintiff's theory that her son stole her identity; it would not be surprising for an individual's immediate family member to have access to the individual's name, date of birth, and social security number. *See, e.g.*, *Johnson v.*

12

*MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (denying similar summary judgment motion where the creditor was notified of a consumer's specific dispute that she was merely an authorized user but not co-obliger, notwithstanding that the creditor confirmed that the name and address provided by the consumer matched their records, because such evidence was equally consistent with the consumer's contention).

While a jury may ultimately conclude that SCU's investigation as a whole—including its further investigation into its account history and signature comparisons, for example—was sufficient, the question is not so free from doubt as to warrant judgment as a matter of law. Accordingly, the Court will deny SCU's motion for summary judgment on Plaintiff's FCRA claims (Counts III and IV).

**MMPA**

The MMPA makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale ... of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. "[A]ny person who 'suffers an ascertainable loss of money or property' as the result of an unlawful practice may file a civil lawsuit to recover actual and punitive damages, as well as attorney fees, from any person who has engaged in a method, act or practice declared unlawful by section 407.020." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (citing Mo. Rev. Stat. § 407.025.1). But in order to recover, a plaintiff demonstrate "a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. General Motors Corp.*, 533 F.3d 913, 922

13

(8th Cir. 2008) (citation omitted).  Further, "a recovery on an [MMPA] claim must be based on an 'ascertainable loss of money or property,' which is a pecuniary loss that does not clearly encompass damages for humiliation or emotional distress." *Ford v. St. Louis Metro. Towing, L.C.*, No. 4:09CV0512TCM, 2010 WL 618491, at *15 (E.D. Mo. Feb. 18, 2010) (citation omitted).

Plaintiff alleges that she suffered an ascertainable loss in the form of the denial of credit and that such loss was causally connected to SCU's misrepresentation of a debt to the CRAs.[5]  The FCRA preempts such a claim.

Specifically, the FCRA restricts states from regulating any subject matter regulated under 15 U.S.C. § 1681s–2, governing the responsibilities of persons who furnish information to CRAs.  *See* 15 U.S.C. § 1681t(b)(1)(F).  As discussed below, § 1681s–2 regulates the duties held by furnishers of information to CRAs, including reporting information, conducting investigations and review upon notice of a dispute, and modifying inaccurate information.  Where, as here, an MMPA claim is based on the violation of such duties, the claim is preempted.  *See, e.g.*, *Young v. CitiFinancial Serv. LLC*, No. 4:16 CV 1171 CDP, 2017 WL 2334982, at *3 (E.D. Mo. May 30, 2017); *Tyson v. Nationstar Mortg., LLC*, No. 4:15CV00763 ERW, 2016 WL 3348400, at *7 (E.D. Mo. June 16, 2016); *Young v. Ditech Fin., LLC*, No. 4:15–CV–1331 (CEJ), 2016 WL

---

[5]  To the extent that Plaintiff alleges that SCU also misrepresented the debt in its communications with Plaintiff, such misrepresentation would not be causally connected to her claimed ascertainable loss—the denial of credit.  Any other intangible loss, such as emotional distress, does not constitute an "ascertainable loss of money or property" under the MMPA.  *See Ford*, 2010 WL 618491, at *15.

14

4944102, at *2 (E.D. Mo. Sept. 16, 2016).  The Court will therefore grant SCU's motion for summary judgment on Plaintiff's MMPA claim (Count V).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Scott Credit Union's renewed motion for summary judgment is **GRANTED in part and DENIED in part**, as set forth above. ECF No. 61.  The motion is **GRANTED** solely as to Count V and is otherwise **DENIED**.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of July, 2022.